

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

August 17, 1950

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1084

Re: The gross receipts
    tax liability of
    United Gas Pipe Line
    Company by virtue of
    recent extension of
    the corporate limits
    of Dallas and Houston.

Dear Sir:

     You have requested the opinion of this office on the above captioned matter.

     The following facts were submitted concerning the operations of the United Gas Pipe Line Company. In Dallas, the company has been selling and delivering natural gas to the Dallas Power and Light Company for many years for use as fuel in its generating plants. Recently, the city limits of Dallas were extended so as to include the various points at which gas is delivered to the Power and Light Company. The Pipe Line Company also sells and delivers natural gas in Dallas to the United Gas Corporation, which is a gas distributing company subject to the tax levied by Article 7060, V.C.S. The Gas Corporation has among its customers within the Dallas city limits a small number of "farm tap" customers who are served through tap lines connecting directly into the lines of the Pipe Line Company.

     In Houston, the Pipe Line Company sells and delivers natural gas to the Gas Corporation for general distribution within the city. The Gas Corporation also has various "farm tap" and "rural service" customers within the city limits which are connected directly into the Pipe Line Company's line. The Pipe Line Company has for many years directly served several industrial consumers which were located outside of the Houston city limits. Houston extended its city limits on January 1, 1950, so as to include a synthetic rubber plant operated by the Goodyear Rubber Company and a generating plant operated by the Houston Lighting and Power Company. These two industrial consumers are served directly by the Pipe Line Company.

Hon. Robert S. Calvert, page 2 (V-1084)

Article 7060, V.C.S., reads in part as follows:

"Each individual, company, corporation, or association owning, operating, managing, or controlling any gas . . . works . . . located within any incorporated town or city in this State, and used for local sale and distribution in said town or city, and charging for such gas . . . shall make quarterly, on the first day of January, April, July, and October of each year, a report to the Comptroller under oath . . . showing the gross amount received from such business done in each such incorporated city or town within this State in the payment of charges for such gas . . . for the quarter next preceding. Said individual, company, corporation, or association, at the time of making said report . . . for any incorporated town or city of ten thousand (10,000) inhabitants or more, according to the last Federal Census next preceding the filing of said report, the said individual, company, corporation, or association, at the time of making said report, shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date an amount equal to one and five thousand one hundred twenty-five ten-thousandths (1.5125) per cent of said gross receipts, as shown by said report. . . .

"Nothing herein shall be construed to require payment of the tax on gross receipts herein levied more than once on the same commodity, and where the commodity is produced by one individual, company, corporation, or association, and distributed by another, the tax shall be paid by the distributor alone." (Emphasis added throughout).

A question of similar nature to the one now before us was presented to this office in Opinion No. V-994 regarding the sales by the El Paso Natural Gas Company to three industrial consumers within the City of El Paso. We quote from that opinion as follows:

"In Opinion No. O-3776, dated August

1, 1941, this office held that if there was a sale of gas to more than one customer or purchaser within a city the distributor was a 'gas works' under the statute and subject to the tax.  We quote from that opinion:

"'It is the opinion of this department in line with the above quoted cases that any individual or corporation selling or distributing liquid petroleum gas to more than one consumer in any incorporated city within the population brackets stated in Article 7060 . . . would be subject to the gross receipts tax levied therein.'

"It is thus our opinion that the El Paso Natural Gas Company, by virtue of the fact that it sells and distributes natural gas to three industrial consumers within an incorporated city, is a 'gas works' and subject to the occupation tax on the gross receipts of such sales as levied by Article 7060, V. C.S."

The only reported case which we have found construing the meaning of the term "gas works" as used in Article 7060 is that of Utilities Natural Gas Co. v. State, 133 Tex. 313, 318, 128 S.W.2d 1153, 1155 (1939).  The Court said:

". . . we have no doubt that the simple fact that a delivery of gas is made in the city, by means of said pipe line, to a single customer, and to nobody else, was not intended by the legislature to be comprehended by the term 'distribution' as used. This term as used does not mean the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city.  It means the transfer of possession of gas to various individuals or concerns in the city.  Any other construction of the term would, in our opinion, involve a departure from the legislative intent."

Under that decision the sale to one industrial customer within a city does not mean that a pipe line

company is engaged in operating a "gas works" for the local sale and distribution of gas. It is our opinion that while the United Gas Pipe Line Company is engaged in making "local sales" in Dallas, it is not a "distributor" of gas as that term was construed by the Court in the Utilities Natural Gas case. The Pipe Line Company in selling to the Gas Corporation is selling to a "distributor" who is subject to the tax rather than to a consumer or customer. Thus the Pipe Line Company is selling and delivering gas to only one industrial consumer in Dallas (the Dallas Power and Light Company), and it is our conclusion that it is not liable for the occupation tax levied by Article 7060.

With respect to the sales within Houston, it is submitted that the Pipe Line Company is making sales and deliveries to two industrial consumers or customers. It has been our opinion that persons engaged in the distribution and sale of gas to two or more customers within the corporate limits of cities and towns are operating a "gas works" and are liable for the occupation taxes levied by Article 7060. It is therefore our conclusion that the United Gas Pipe Line Company is liable for the tax in the amount of 1.5125 per cent of gross receipts arising from the sale of natural gas to all its consumers or customers within Houston from December 31, 1949, the date the company began operating a "gas works" within that city.

It is our understanding that the United Gas Pipe Line Company is a wholly owned subsidiary of the United Gas Corporation. We have, for purposes of this opinion, assumed that the sales to the farm tap and rural service customers within Dallas and Houston were bona fide sales to the distributor and that the Pipe Line Company is not, through a joint operation, directly engaged or financially interested in the actual distribution of gas to those customers.

## SUMMARY

A pipe line company which sells to two or more industrial consumers within a city is operating a "gas works" and is liable for the occupation tax levied by Article 7060, V.C.S. A company which sells to only one industrial consumer is not subject to the tax.

Hon. Robert S. Calvert, page 5   (V-1084)


<u>Utilities Natural Gas Co. v. State</u>, 133
<u>Tex. 313, 128 S.W.2d 1153</u> (1939); Opin-
ions Nos. V-994 and 0-3776.

APPROVED:                          Yours very truly,

W. V. Geppert                          PRICE DANIEL
Taxation Division                  Attorney General

Everett Hutchinson
Executive Assistant

                                   By
Charles D. Mathews                     Frank Lake
First Assistant                        Assistant

FL/mwb:mw